HOLCOMB *v.* CZENKUSCH.

1. REFORMATION OF INSTRUMENTS—LAND CONTRACTS—MUTUAL MISTAKE—FRAUD—VENDOR AND PURCHASER.
   Reformation of a contract for the sale of lots by filling in blank spaces providing for certain restrictions as to the nature of the buildings to be erected thereon and the cost thereof may be had only in case of fraud or mutual mistake of the parties.

2. SAME—MUTUAL MISTAKE NEGATIVED BY EVIDENCE.
   Testimony showing that the vendor in drafting the contract intentionally omitted to fill in the blank spaces, *held*,

to negative his claim of mutual mistake, precluding his right to relief.

3. SAME—CLAUSE WITH BLANK SPACES UNFILLED OF NO EFFECT. Where none of the blank spaces in a restrictive clause in a land contract were filled in, said clause was of no more effect than if it had not been there.

Appeal from Oakland; Gillespie (Glenn C.), J.   Submitted January 5, 1923.   (Docket No. 45.)   Decided March 22, 1923.

Bill by Augustin T. Holcomb against Herman Czenkusch for the specific performance of a land contract.   From the decree rendered, both parties appeal.   Modified and affirmed.

*James H. Lynch,* for plaintiff.

*Andrew L. Moore,* for defendant.

McDONALD, J.   This bill was filed to reform a land contract and to have it specifically enforced as reformed.   In 1913, the defendant owned land fronting on the south shore of Walled Lake in Oakland county, Michigan.   Out of it he platted a subdivision known as Chapman's Walled Lake subdivision.   The lots shown upon the plat are bisected by a highway 50 feet wide, known as the Walled Lake road.   The auditor general refused his approval of the proposed plat until those parts of the lots on either side of this road were separately numbered.   This was done and the plat was approved.   In the meantime, on August 20, 1913, the plaintiff had purchased on land contract lots described as numbers 83, 84, 85, and 86 of the proposed plat.   When the lots were renumbered, as required by the auditor general, these numbers were retained as designating those parts of the lots lying north of the road, and those parts lying south of it were numbered 101, 102, 103, and 104.   It is the

plaintiff's claim that the contract should be reformed by correcting the description so as to include lots 101, 102, 103, and 104.    The plaintiff tendered to the defendant the balance due on his contract with interest and demanded a deed of the 8 lots as shown by the corrected plat.    The defendant refused to make and deliver the deed as requested, and the plaintiff brought this suit.

The defendant answering denies the right of the plaintiff to a reformation of the contract, and in his pleadings asks that in the event the court should reform it and decree specific performance, that such decree shall restrict the use of the lots for cottage and residence purposes only, the cottages to cost not less than $500 each, and to be erected not less than 25 feet from the front lines of the lots.    In an amendment to his answer and cross-bill filed by leave of the court after the testimony was concluded, he alleges that as a part of the consideration for the sale of the lots, verbally agreed to at the time, the plaintiff was to improve them by building a cottage on one of the lots during that season, and a cottage on each of the remaining lots very soon thereafter; that he did not build these cottages, and that, therefore, there has been a failure of a part of the consideration, and that for this reason the contract cannot be specifically enforced.

The circuit judge reformed the contract as requested by the plaintiff and directed the defendant to execute and deliver a warranty deed containing the following restrictions:

"No building shall be erected upon any of said lots which shall cost less than $500, and no building shall be placed within 25 feet of the front line of lots 83, 84, 85, and 86."

From the decree entered both parties have appealed, the plaintiff claiming that the decree should be modi-

fied by eliminating the restrictions imposed by the court, the defendant claiming that the word "dwelling" or "cottage" should be inserted in place of the word "building." In his brief, and in his oral argument before this court, counsel for the defendant concedes that the plaintiff is entitled to a reformation of his contract so as to include lots 101, 102, 103, and 104, and that as reformed he is entitled to specific performance thereof, if the lots be restricted in their use so that the plaintiff shall be required to build thereon no buildings except cottages which are to cost not less than $500 each and which are to be built not less than 25 feet from the front lines of the lots. Whether there should be any restrictions in the use of the lots or whether there should be such restrictions as the defendant claims, is the sole remaining question in the case.

In making the contract in question the ordinary printed form was used. It contained in the printed form the following provision for restrictions:

\*   \*   \*   "and, as part and further consideration of this contract, and within............from the date hereof, to erect on said lands a suitable............ at least.............stories high, to cost not less than five hundred dollars, said............to be not less than 25 feet from the front line of said lot."

The defendant, who drafted the contract, did not fill in these blank spaces. He now asks to have them filled in according to an oral agreement which he says he had with plaintiff at the time. This can only be done because of fraud or mutual mistake of the parties. The defendant claims mutual mistake. The testimony does not support this claim. The plaintiff denies that there was any agreement as to restrictions. The defendant in drafting the contract intentionally omitted to fill in the blank spaces in the printed form

because he thought it was not necessary.    He would rely on the word of the purchaser. .

"Q. Have you any explanation as to why you didn't fill it in?

"A. Well, I have not got any explanation to make —quite likely I thought maybe it was not necessary.

"Q. That would be your reason, you did not think it would be necessary?

"A. Thinking back today, I know it was.  *  *  *

"Q. Where did you get the blank contract to fill in?

"A. I went down town and bought one, maybe I borrowed some.    But it was their agreement what I done and I told them in the first place that I took their word for it.  *  *  *

"Q. When you began to sell lots on that subdivision, after you sold Hogle the first year or two, did you write the restrictions in the deeds or contracts?

"A. Some of them I did, most of them I didn't, they were friends of mine and I depended on their word."

This evidence negatives the claim that because of a mutual mistake the restrictions claimed to have been agreed upon were not written into the contract. It was not intended that they should be written in. There was no mistake—and no fraud. Equity cannot reform unless there is mistake or fraud.

While the circuit judge correctly declined to reform the contract by incorporating the alleged oral agreement, he construed the blank provision as a restriction against erecting a "building" upon any of the lots which would cost less than $500 and which would be placed within 25 feet of the front line. In this we think the court erred.    The blank spaces in the restriction clause were not filled in.    They were not intended to be.    There was therefore no restriction clause in the contract.    There was nothing to be construed.    The unfilled portion of the printed form was of no more effect than if it had not been there.    If they had desired to make it effective they would have filled it in and made it a part of the contract.    The

court added a provision to the written contract which the parties themselves purposely left out.    He was without authority to do it.

The decree should be modified, granting specific performance of the contract as reformed without any restriction as to the use of the property.

Plaintiff will have costs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.